UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILBUR ATCHERLEY,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>J. HANNA, et al.,<br><br>　　　　　Defendants. | No. 2:13-cv-00576 AC P<br><br>ORDER AND FINDINGS & RECOMMENDATIONS |

Plaintiff, a state prisoner proceeding pro se, seeks relief pursuant to 42 U.S.C. § 1983. Pending before the court are: (1) plaintiff's motions for leave to file and to serve a first amended complaint; (2) plaintiff's motions for leave to file and to serve a second amended complaint; (3) plaintiff's motion to compel the CDCR to provide addresses for the unserved defendants; (4) defendants' motion to dismiss the first amended complaint; and, (5) plaintiff's motion for judicial notice. Plaintiff filed an opposition to the motion to dismiss as well as a sur-reply following defendant's reply. These matters are fully briefed and now ripe for adjudication.

I.　Procedural History

The original complaint in this civil action was filed on March 22, 2013. Plaintiff alleged an Eighth Amendment violation based on defendants' deliberate indifference to his serious medical needs, a violation of the Americans with Disabilities Act ("ADA") as well as the Rehabilitation Act ("RA"), a retaliation claim, as well as a state law negligence claim. ECF No.

1

1. Service was ordered on the California Department of Corrections and Rehabilitation ("CDCR"), High Desert State Prison ("HDSP"), S. Garcia, B. Gricewich, J. Hanna, N. Owens, A. Rivas, and D. Wilson on April 9, 2013. ECF No. 4. Defendants Hanna, Owens, HDSP, and the CDCR filed a motion to dismiss the complaint to which plaintiff responded by filing a motion to amend his complaint. ECF Nos. 18, 26. On September 17, 2013, this court granted plaintiff's motion for leave to file a first amended complaint and vacated the pending motion to dismiss without prejudice to its refiling in response to the first amended complaint. ECF No. 27. Less than a week later, plaintiff filed a first amended complaint along with a motion for leave to amend even though leave to amend had already been granted. See ECF Nos. 28, 29. Defendants Gricewich, Hanna, Owens, HDSP, and the CDCR filed the pending motion to dismiss the first amended complaint on October 10, 2013. ECF No. 31. Plaintiff opposed the motion on October 31, 2013. ECF No. 32. Before the pending motion to dismiss could be adjudicated, plaintiff filed a motion for leave to file a second amended complaint along with a proposed second amended complaint. ECF No. 39.

II.     Allegations in the First Amended Complaint

Plaintiff is a mobility impaired state prisoner who had a medical order not to climb or to use stairs for any reason. ECF No. 29 at 10-11. On or about February 8, 2012 plaintiff learned that he was being transferred the following week to HDSP for a court appearance. Id. at 10. That same day, plaintiff filed an inmate appeal requesting special transportation to and from HDSP "because of his disabilities and physical limitations." Id. at 11. Plaintiff was transported from KVSP to HDSP on February 14, 2012 using special transportation without incident. Id. at 11. He was informed on February 16, 2012 that his inmate appeal had been granted and that he would be transported back to KVSP the same way. Id. at 11.

Based on Defendant Gricewich's failure to notify prison officials at HDSP that plaintiff's inmate appeal for special transportation had been granted, plaintiff was transported to court using a regular van on February 16, 2012. ECF No. 29 at 12. Before plaintiff was handcuffed, he informed Defendants Hanna and Owens that he was medically disabled and that he required the use of a walker for mobility. Id. at 13. Since the placement of the handcuffs prevented plaintiff

2

1   from safely using his walker, he requested the use of a wheelchair. Id. That request was denied.
2   Id. Plaintiff was then forced to walk 100-150 feet to the van without any assistance from either
3   Defendant Hanna or Owens. Id. When plaintiff arrived at the van and saw a three and a half foot
4   climb was required, plaintiff informed Defendants Hanna and Owens that he was not supposed to
5   climb. Id. Plaintiff was then assisted into the back of the van, and when he almost fell
6   Defendants Hanna and Owens took hold of his elbows and steadied him. Id. at 14. Plaintiff
7   alleges that he severely injured his left knee during the walk and the climb into the transportation
8   van. Id. at 14.

9          On March 8, 2012 plaintiff was taken out of his cell at HDSP at 2:00 a.m. and told that he
10  was being transported back to KVSP via a regular bus. ECF No. 29 at 16. Plaintiff informed
11  Defendant Rivas that he was mobility impaired and that he had a valid medical chrono preventing
12  him from climbing or using the stairs. Id. Defendant Rivas told plaintiff in a threatening tone
13  that he "could get on the bus on his own and set [sic] in the seat near the bathroom at the rear of
14  the bus or he could be forcibly placed on the bus and ride the distance handcuffed upside down to
15  a cage at the front of the bus." Id. at 16. Defendant Payne also told plaintiff that he was getting
16  on the bus "one way or another" which was said in the presence of Defendant Garcia. Id. at 17.
17  When plaintiff got on the bus he again injured his left knee. Id. During the ride back to KVSP
18  plaintiff got up to the use the restroom and fell down because of the pain and weakness in his
19  knee and lower back. Id. at 17-18.

20         Plaintiff alleges that Defendant Wilson was in charge of the March 8, 2012 transportation
21  bus and that he had access to plaintiff's medical chronos and doctor's orders, but he chose to
22  ignore them. ECF No. 29 at 18. Plaintiff also alleges that Defendant Wilson failed to properly
23  train and supervise Defendants Rivas and Garcia. Id.

24         Based on these events, plaintiff alleges a violation of the Eighth Amendment, the ADA,
25  and the RA for failing to accommodate plaintiff's disability during his transportation. ECF No.
26  29 at 23-30. Plaintiff also alleges a First Amendment retaliation claim for denying plaintiff
27  access to the courts and to seek redress for grievances relating to his ADA needs. Id. In addition,
28  plaintiff raises several supplemental state law claims based on negligence and obstruction of

1  justice.  Id.  By way of relief, plaintiff seeks compensatory and punitive damages, declaratory

2  relief, and a preliminary and permanent injunction.  Id. at 31.

3  III.     Defendant's Motion to Dismiss the First Amended Complaint

4  　　　　On October 10, 2013, Defendants Gricewich, Hanna, Owens, HDSP, and the CDCR filed

5  a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure on the

6  grounds that plaintiff failed to state a violation of the ADA or the RA; he failed to state a First

7  Amendment claim of retaliation; and, plaintiff is barred from pursuing damages against

8  defendants in their official capacity.  ECF No. 31.  First defendants argue that plaintiff failed to

9  allege that he was excluded from participating in any prison service or program because of his

10 disability.  ECF No. 31-1 at 4.  As a result, the allegations in the first amended complaint fail to

11 state a claim under either the ADA or RA.  Defendants also contend that only a public entity and

12 not individuals may be sued for damages under the ADA and the RA.  Id. at 4, 6.  Therefore, the

13 ADA and RA claims against Defendants Hanna, Gricewich and Owens should be dismissed

14 regardless of whether those individuals are sued in their official capacities.  Id.  As to plaintiff's

15 claim of retaliation, Defendants Hanna and Owens argue that the claim should be dismissed

16 because plaintiff did not allege any adverse action taken against him because of any protected

17 conduct engaged in by plaintiff.  Id. at 6-7.  Lastly, defendants argue that plaintiff may only

18 recover monetary damages from Defendants Hanna, Gricewich, and Owens in their individual

19 capacities.  ECF No. 31-1 at 7.  To the extent that the first amended complaint also seeks

20 monetary damages from these defendants in their official capacities, the claims should be

21 dismissed.  Id.

22 IV.     Plaintiff's Opposition to the Motion to Dismiss

23 　　　　Plaintiff counters that although he was not precluded from going to court or from being

24 transported back to KVSP from HDSP, "he was prevented from being transferred or taken to

25 court in a safe and humane fashion in view of his prison recognized disability."  ECF No. 32 at 3.

26 Plaintiff cites to several cases finding an ADA or RA violation where the plaintiff was not wholly

27 precluded from prison services, but was instead placed at risk of incurring serious injuries every

28 time he took advantage of such services.  Id.  (citing Kiman v. New Hampshire Dep't of

4

Corrections, 451 F.3d 274 (1st Cir. 2006) and Divine Allah v. Goord, 405 F.Supp.2d 265 (S.D. N.Y. 2005)). Defendants' failure to accommodate plaintiff's mobility disability during his transport is sufficient to constitute an ADA and RA violation. Id. at 3. "It is enough if plaintiff's access is made unusually difficult, painful, or dangerous by the failure of the public entity to accommodate plaintiff's disability, including its officers." Id. at 4.

Plaintiff further asserts that the anti-retaliation provision of the ADA permits individuals to be sued rather than just a public entity. Id. at 4. Additionally, plaintiff argues that he should be permitted to conduct discovery to determine whether Defendants Hanna, Gricewich and Owens received proper training on ADA issues. Id. at 4-5.

With respect to his RA claim, plaintiff concedes that this claim should be dismissed against Defendants Hanna, Owens, Gricewich, Payne, Wilson, Garcia, and Rivas in their individual capacities.[1] Id. at 5.

In opposition to defendants' contention that his retaliation claim should be dismissed, plaintiff states that the defendants' actions did have a chilling effect on his first amendment right "to participate in the judicial process, as a defendant, a plaintiff or as a witness without fear of serious injury." ECF No. 32 at 5. After plaintiff was returned back to KVSP, he once again was subpoenaed to testify as a witness in the Lassen County Superior Court. Id. However, this time, rather than suffer the same mistreatment described in the first amended complaint, plaintiff refused to be transferred to HDSP to take part in the case. Id. at 6. Plaintiff attached various documents indicating his refusal to be transported back to court for this purpose. See ECF No. 32 at 8-12.

V.      Reply and Sur-Reply

In reply, defendants distinguish the case law cited by plaintiff in his opposition and continue to assert that plaintiff did not allege a denial of a prison service or program to support an ADA or RA violation. ECF No. 33 at 2-3. Moreover, Defendants Hanna, Owens, and Gricewich did not engage in any intentional conduct in violation of the ADA requiring this claim to be

---

[1] The summons for Defendants Wilson, Garcia, and Rivas were returned unexecuted. See ECF No. 34. Defendant Payne has not yet been ordered to be served.

1  dismissed. Id. at 3-4. Defendants further argue that plaintiff's contention that he can sue
2  defendants in their individual capacity under the ADA in order to establish negligent training or
3  supervision by the CDCR is not supported by any case law or statutory authority. Id. at 4-5.
4  Plaintiff failed to state a retaliation claim because he did not allege that defendants had
5  knowledge of his prior activities that were protected by the First or Eighth Amendments. Id. at 5-
6  6.

7  While not provided for in the Federal Rules of Civil Procedure, plaintiff filed a sur-reply
8  in opposition to defendants' motion to dismiss. ECF No. 35. However, defendants did not object
9  or file a motion to strike so the court will consider the argument therein. In the sur-reply, plaintiff
10 references specific portions of his first amended complaint that allege intentional conduct on the
11 part of Defendants Hanna and Owens. Id. at 2-3. "By placing [plaintiff] in handcuffs instead of
12 waist chains, plaintiff was denied meaningful access to the court and to the prison medical
13 program as well as to safe transportation with his walker anywhere." Id. at 3. Concerning the
14 retaliation claim, plaintiff asserts that Defendants Hanna and Owens "surely knew" that they were
15 transporting plaintiff to "be a witness in a criminal case against the interest of defendants' co-
16 workers." Id. at 4. Therefore, plaintiff alleges that the retaliation occurred in a "matter of hours
17 and minutes." Id. at 5. Plaintiff continues to maintain that he should be permitted to sue
18 Defendants Hanna, Owens, and Gricewich in their official capacities under the ADA and the RA
19 since they are agents of a public entity. Id. at 5.

20 VI.    Plaintiff's Motion for Judicial Notice

21 In a motion filed on December 23, 2013, plaintiff requests the court to take judicial notice
22 of a case from the Western District of Virginia because the facts are similar to his own case. See
23 ECF No. 37 (citing Bane v. Virginia Dep't of Corrections, 267 F.Supp.2d 514 (W.D. Va. 2003).
24 For the reasons articulated in the Bane case, defendants' motion to dismiss should be denied
25 according to plaintiff. Id. at 2.

26 While the court is cognizant of the authority cited by plaintiff, a party need not request
27 judicial notice of published decisions from other courts. Indeed, such requests unnecessarily
28 consume judicial resources and delay the resolution of cases pending in this court. If a party

1 wants the court to consider a published decision, it is sufficient to cite the decision in its brief.
2 Supplemental authority is not an adjudicative fact subject to judicial notice under Rule 201 of the
3 Federal Rules of Evidence.  Accordingly, the undersigned recommends denying plaintiff's motion
4 for judicial notice.

5 V.     Standards Governing the Motion

6      The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the legal
7 sufficiency of the complaint.  N. Star Int'l v. Ariz. Corp. Comm'n, 720 F.2d 578, 581 (9th Cir.
8 1983).  "Dismissal can be based on the lack of a cognizable legal theory or the absence of
9 sufficient facts alleged under a cognizable legal theory."  Balistreri v. Pacifica Police Dep't, 901
10 F.2d 696, 699 (9th Cir. 1990).  In order to survive dismissal for failure to state a claim, a
11 complaint must contain more than a "formulaic recitation of the elements of a cause of action;" it
12 must contain factual allegations sufficient to "raise a right to relief above the speculative level."
13 Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).  "The pleading must contain
14 something more ... than ... a statement of facts that merely creates a suspicion [of] a legally
15 cognizable right of action."  Id., (quoting 5 C. Wright & A. Miller, Federal Practice and
16 Procedure § 1216, pp. 235–236 (3d ed. 2004).  "[A] complaint must contain sufficient factual
17 matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal,
18 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570).  "A claim has facial plausibility
19 when the plaintiff pleads factual content that allows the court to draw the reasonable inference
20 that the defendant is liable for the misconduct alleged."  Id.

21      In considering a motion to dismiss, the court must accept as true the allegations of the
22 complaint in question, Hospital Bldg. Co. v. Rex Hospital Trustees, 425 U.S. 738, 740 (1976),
23 construe the pleading in the light most favorable to the party opposing the motion and resolve all
24 doubts in the pleader's favor.  Jenkins v. McKeithen, 395 U.S. 411, 421, reh'g denied, 396 U.S.
25 869 (1969).  The court will "'presume that general allegations embrace those specific facts that
26 are necessary to support the claim.'"  National Organization for Women, Inc. v. Scheidler, 510
27 U.S. 249, 256 (1994) (quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 561, (1992)).
28 Moreover, pro se pleadings are held to a less stringent standard than those drafted by lawyers.

1   Haines v. Kerner, 404 U.S. 519, 520 (1972).

2       The court may consider facts established by exhibits attached to the complaint. Durning
3   v. First Boston Corp., 815 F.2d 1265, 1267 (9th Cir. 1987). The court may also consider facts
4   which may be judicially noticed, Mullis v. United States Bankruptcy Ct., 828 F.2d 1385, 1388
5   (9th Cir. 1987); and matters of public record, including pleadings, orders, and other papers filed
6   with the court, Mack v. South Bay Beer Distributors, 798 F.2d 1279, 1282 (9th Cir. 1986). The
7   court need not accept legal conclusions "cast in the form of factual allegations." Western Mining
8   Council v. Watt, 643 F.2d 618, 624 (9th Cir. 1981).

9       A pro se litigant is entitled to notice of the deficiencies in the complaint and an
10  opportunity to amend, unless the complaint's deficiencies could not be cured by amendment. See
11  Noll v. Carlson, 809 F.2d 1446, 1448 (9th Cir. 1987).

12  V.       Standards Governing ADA and RA Claims

13      Title II of the Americans with Disabilities Act prohibits a public entity from
14  discriminating against a qualified individual with a disability on the basis of disability. 42 U.S.C.
15  § 12132 (1994); Weinrich v. L.A. County Metro Transp. Auth., 114 F.3d 976, 978 (9th Cir.), cert.
16  denied, 522 U.S. 971 (1997). The Supreme Court has held that Title II of the ADA applies to
17  state prisons. Pennsylvania Dept. of Corr. v. Yeskey, 524 U.S. 206, 210 (1998); see also Lee v.
18  City of Los Angeles, 250 F.3d 668, 691 (9th Cir. 2001). To state a claim under Title II, the
19  plaintiff must allege four elements: (1) the plaintiff is an individual with a disability; (2) the
20  plaintiff is otherwise qualified to participate in or receive the benefit of some public entity's
21  services, programs, or activities; (3) the plaintiff was either excluded from participation in or
22  denied the benefits by the public entity; and (4) such exclusion, denial of benefits or
23  discrimination was by reason of the plaintiff's disability. Simmons v. Navajo County, Ariz., 609
24  F.3d 1011, 1021 (9th Cir. 2010); McGary v. City of Portland, 386 F.3d 1259, 1265 (9th Cir.
25  2004); Weinrich, 114 F.3d at 978. The term "public entity" is defined under Title II as any state
26  or local government or any department, agency, or other instrumentality of state or local
27  government. 42 U.S.C. § 12131(1)(A), (B). Individuals are not proper defendants under Title II
28  of the ADA. See Vinson v. Thomas, 288 F.3d 1145, 1156 (9th Cir. 2002) ("join[ing] the Fifth,

Eighth, and Eleventh Circuits and hold[ing] that a plaintiff cannot bring an action under 42 U.S.C. § 1983 against a State official in her individual capacity to vindicate rights created by Title II of the ADA or section 504 of the Rehabilitation Act"); Walker v. Snyder, 213 F.3d 344, 346 (7th Cir.2000); Alsbrook v. City of Maumelle, 184 F.3d 999, 1005 n. 8 (8th Cir.1999).

To state a claim under the Rehabilitation Act, plaintiff must show that: "(1)(1) he is an individual with a disability; (2) he is otherwise qualified to receive the benefit; (3) he was denied the benefits of the program solely by reason of his disability; and (4) the program receives federal financial assistance." Duvall v. County of Kitsap, 260 F.3d 1124, 1135 (9th Cir.2001). Title II of the ADA was modeled after the Rehabilitation Act itself. Id. Therefore, the elements of the ADA and RA claim are functionally the same. For that reason, the ADA and RA claims will be addressed together for purposes of resolving defendants' motion to dismiss.

VI.   Standards Governing Retaliation Claim

The Ninth Circuit Court of Appeals has enumerated the elements for First Amendment retaliation in the prisoner context as follows: "(1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567–568 (9th Cir. 2005). A "plaintiff alleging retaliation for the exercise of constitutionally protected rights must initially show that the protected conduct was a 'substantial' or 'motivating' factor in the defendant's decision." Soranno's Gasco, Inc. v. Morgan, 874 F.2d 1310, 1314 (9th Cir. 1989).

VII.   Standards Governing Monetary Damages

While the Eleventh Amendment bars a prisoner's section 1983 claims against a state official sued in his official capacity, it does not preclude monetary damages against a state official sued in his or her personal or individual capacity. Ashker v. California Dep't of Corrections, 112 F.3d 392, 394–95 (9th Cir.1997). Nor does the Eleventh Amendment bar suits for prospective declaratory or injunctive relief against state officials in their official capacity. Doe v. Lawrence Livermore Nat'l Lab., 131 F.3d 836, 839 (9th Cir. 1997).

////

9

VIII. <u>Analysis</u>

  A. <u>ADA and RA Claims</u>

   Defendants first contend that plaintiff's ADA and RA claims are insufficient because plaintiff failed to allege that he was wholly excluded from participating in any prison service or program because of his disability.  While plaintiff relies on case law from outside of the Ninth Circuit, it is clear that the phrase "services, programs, or activities" is defined broadly so as to effectuate the remedial purpose of the ADA.  <u>See</u> <u>Barden v. City of Sacramento</u>, 292 F.3d 1073, 1076-77 (9th Cir. 2002).  Such an all-inclusive definition would certainly include transportation provided by the CDCR.  Moreover, a disabled individual does not have to be totally excluded from a service, program, or activity in order to state an ADA violation.  The Ninth Circuit has concluded, albeit in a different context, that "[o]bstructed sidewalks exclude disabled persons from ordinary communal life and force them to risk serious injury to undertake daily activities.  This is precisely the sort of 'subtle' discrimination stemming from 'thoughtlessness and indifference' that the ADA aims to abolish."  <u>Cohen v. City of Culver City</u>, ___ F.3d ____, 2014 WL 2535329 (9th Cir. 2014).  The United States Supreme Court has recognized that Section 504 of the Rehabilitation Act requires "meaningful access" to programs or activities receiving federal financial assistance.  <u>See</u> <u>Alexander v. Choate</u>, 469 U.S. 287, 301 (1985).  "[T]o assure meaningful access, reasonable accommodations in the … program or benefit may have to be made."  <u>Id.</u>  Here, the reasonable accommodation requested by plaintiff was special transportation that would not require him to climb or ascend stairs.  Plaintiff has sufficiently stated a claim under the ADA and RA based on his transportation in an unsafe manner in light of his recognized mobility-related disability.  Accordingly, the undersigned recommends denying the motion to dismiss the ADA and RA claims.

   Plaintiff may not recover damages under the ADA from an individual state actor or from a public actor in his individual capacity.  <u>See</u> <u>Garcia</u>, 280 F.3d at 107.  In the instant case, plaintiff sues the individual defendants in their official and individual capacities.  Because plaintiff cannot maintain an action against individuals under Title II of the ADA or the RA, these claims against Defendants Hanna, Gricewich and Owens in their individual capacity must be dismissed with

1  prejudice.  See Thomas v. Nakatani, 128 F.Supp.2d 684, 691–93 (D. Hawai'i 2000).

2       B.     Retaliation Claim

3  The motion to dismiss should be granted on plaintiff's claim that he was retaliated against
4  for exercising his First Amendment rights.  The undersigned finds that the plaintiff has not set
5  forth facts in his first amended complaint which support a claim that defendants retaliated against
6  him for his First Amendment activities.  A First Amendment retaliation claim requires the
7  plaintiff to show that the exercise of the protected rights at issue was a substantial or motivating
8  factor in the challenged conduct of the defendant.  See Mt. Healthy City Sch. Dist. Bd. of Educ. v.
9  Doyle, 429 U.S. 274, 287 (1977).  This requires facts demonstrating that the defendants knew
10  about the exercise of protected.  In his sur reply, plaintiff makes the assumption that Defendants
11  Hanna and Owens "surely knew" the purpose for which he was being transported (to testify
12  against their coworkers), and then infers that they mistreated him for that reason.  ECF No. 35 at
13  4.  However, this is merely a legal conclusion "cast in the form of factual allegations."  Western
14  Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir. 1981).

15  Furthermore, the factual allegations in the first amended complaint do not support
16  plaintiff's alternate theory that he was retaliated against for filing an inmate appeal at KVSP
17  requesting special transportation to and from HDSP because of his disabilities.  The complaint
18  itself alleges that Defendant Gricewich, the Classification Representative at KVSP, failed to
19  notify prison officials at HDSP, where the remaining defendants worked, that plaintiff's inmate
20  appeal for special transportation had been granted.  Accepting these allegations as true, as the
21  court must, there is no factual basis for the claim that plaintiff was retaliated against based on this
22  inmate appeal.  Accordingly, the undersigned recommends granting the motion to dismiss as to
23  plaintiff's retaliation claim against Defendants Hanna and Owens.

24       C.     Monetary Damages

25  Here plaintiff has sued the defendants in both their official and individual capacities for
26  monetary damages and injunctive relief.  At the time the alleged violations occurred, all
27  defendants were employed by the California Department of Corrections and Rehabilitation.
28  Therefore, Plaintiff cannot recover monetary damages for acts defendants committed in their

11

official capacities, but may seek damages for actions taken by defendants in their individual capacities. The undersigned therefore recommends that the court grant defendants' motion to dismiss to the extent that plaintiff seeks monetary damages against defendants in their official capacities.

VI.   Motion for Leave to File Second Amended Complaint

On February 10, 2014 plaintiff filed a motion for leave to file a second amended complaint along with a proposed second amended complaint. ECF No. 39. Defendants have not opposed the motion. According to plaintiff, the second amended complaint "presents the facts better [with] more paragraphs but less counts" and attempts to cure deficiencies in the first amended complaint. See ECF Nos. 39, 40. Plaintiff has also added exhibits to the second amended complaint which were missing from the first amended complaint. ECF No. 40. The second amended complaint adds no new defendants or causes of action, and clarifies plaintiff's allegations.

In determining whether leave to amend should be granted, the court balances several factors. First, the record does not demonstrate undue delay or bad faith on petitioner's part, which would weigh against amendment. See California Architectural Bldg. Prod. v. Franciscan Ceramics, 818 F.2d 1466, 1472 (9th Cir. 1988) (reviewing valid reasons for denying leave to amend). However, in deciding whether to permit amendment, prejudice to defendants is the most important consideration. Eminence Capital, 316 F.3d at 1052. No prejudice is apparent here. Defendants are on notice of the substance of the claims, and amendment will not significantly delay the proceedings because plaintiff has already filed a proposed second amended complaint. Additionally, four defendants have yet to be served.

Finally, this is not a case in which amendment is necessarily futile. See Klamath–Lake Pharm. Ass'n v. Klamath Med. Serv. Bureau, 701 F.2d 1276, 1293 (9th Cir. 1983) (holding that, while leave to amend shall be freely given, the court need not allow futile amendments). "Unless it is absolutely clear that no amendment can cure the defect ..., a pro se litigant is entitled to notice of the complaint's deficiencies and an opportunity to amend prior to dismissal of the action." Lucas v. Dep't of Corr., 66 F.3d 245, 248 (9th Cir. 1995) (per curiam). The second amended

1  complaint omits the claims that the undersigned recommends be dismissed with prejudice from
2  the first amended complaint, as to which amendment would be futile.  Based on these factors, the
3  undersigned recommends granting plaintiff's motion for leave to file a second amended
4  complaint.

5  VII.    Ancillary Motions

6  Also pending before the court is plaintiff's motion for service of the first amended
7  complaint, ECF No. 30, a motion to compel the CDCR to provide the addresses for the unserved
8  defendants, ECF No. 36, and plaintiff's request for service of the second amended complaint,
9  ECF No. 40.  The court will address each motion in turn.

10  With respect to plaintiff's motion for service of the first amended complaint, this motion
11  is moot in light of the above recommendation to grant plaintiff's motion for leave to file a second
12  amended complaint.  Therefore, the undersigned recommends that this motion be denied as moot.

13  Likewise, based on subsequent pleadings filed by plaintiff, it appears that he has already
14  obtained new service addresses for Defendants Wilson, Garcia, and Rivas who have not been
15  served to date.  See ECF No. 38 at 1.  Based on this information, the undersigned recommends
16  denying plaintiff's motion to compel the CDCR to provide addresses for the unserved defendants
17  as moot.

18  As to plaintiff's request for service of the second amended complaint, ECF No. 40, as well
19  as plaintiff's request for additional USM-285 forms to serve defendants, ECF No. 38, the court
20  will defer ordering service of the second amended complaint until the instant findings and
21  recommendation have been reviewed by a district judge.  Therefore, no action will be taken at
22  this time with respect to service of the second amended complaint on Defendants Wilson, Garcia,
23  Rivas, and Payne.

24  IT IS HEREBY ORDERED that the clerk of court randomly assign this case to a district
25  judge.

26  IT IS FURTHER RECOMMENDED that:

27  1. Plaintiff's motion for leave to file a first amended complaint (ECF No. 28) be denied as
28  unnecessary;

1    2. Plaintiff's motion for service of the first amended complaint (ECF No. 30) be denied as
2  moot;
3    3. Defendants' motion to dismiss (ECF No. 31) the first amended complaint be granted in
4  part and denied in part as follows:
5        a. The motion to dismiss plaintiff's ADA and RA claims against Defendants
6        Hanna, Gricewich and Owens in their individual capacities be granted without leave to
7        amend;
8        b. The motion to dismiss plaintiff's retaliation claim against Defendants Hanna and
9        Owens be granted;
10       c. The motion to dismiss plaintiff's requests for monetary damages against defendants in
11       their official capacities be granted without leave to amend;
12       d. The motion to dismiss the ADA and RA claims be denied;
13   4. Plaintiff's motion for leave to file a second amended complaint (ECF No. 39) be
14  granted;
15   5. Plaintiff's motion to compel the CDCR to provide service addresses (ECF No. 36) be
16  denied as moot;
17   6. Plaintiff's motion for judicial notice (ECF No. 37) be denied; and,
18   7. Plaintiff's request for service of the second amended complaint (ECF No. 40) be
19  deferred pending review of these findings and recommendation by the district judge.
20       These findings and recommendations are submitted to the United States District Judge
21  assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-one days
22  after being served with these findings and recommendations, any party may file written
23  objections with the court and serve a copy on all parties.  Such a document should be captioned
24  "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the
25  objections shall be served and filed within fourteen days after service of the objections.  The
26  ////
27  ////
28  ////

parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

DATED: June 25, 2014

/s/ Allison Claire
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE